UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

MICHAEL A. NICOMETO,

                        Plaintiff,        **No. 1:11-cv-00899(MAT)**
                                          **DECISION AND ORDER**

            -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                        Defendant.

———————————————————————————

## INTRODUCTION

Represented by counsel, Michael A. Nicometo ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On June 5, 2012, Plaintiff applied for DIB, asserting disability beginning December 30, 2011, due to Crohn's disease and depression. After his application was denied, Plaintiff requested a hearing, which was held before Administrative Law Judge Michael W. Devlin ("the ALJ") on November 21, 2013. (T.27-49, 71).[1] Plaintiff appeared with his attorney and testified, as did vocational expert Julie Andrews ("the VE"). On March 21, 2014, the

---

[1] Citations to "T." in parentheses refer to pages from the certified transcript of the administrative record.

ALJ issued an unfavorable decision. (T.6-22). The Appeals Council denied Plaintiff's request for review on August 17, 2015, making the ALJ's decision the final decision of the Commissioner. This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The parties have submitted comprehensive factual recitations contained in their briefs, which the Court adopts and incorporates by reference. The record evidence will be discussed in further detail below, as necessary to the resolution of the parties' contentions.

For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further administrative proceedings consistent with this opinion.

## THE ALJ'S DECISION

At step one of the sequential evaluation, see 20 C.F.R. § 404.1520(a), the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 6, 2012. (T.11). At step two, the ALJ found that Plaintiff had the following "severe impairments": ulcerative colitis, chronic colitis, Crohn's ileocolitis,[2] and an adjustment disorder with mixed anxiety and depressed mood. (Id.). At step three, the ALJ found that Plaintiff did not meet or equal any listed impairment, including Listing 5.06B (inflammatory bowel disease). (T. 12-14).

---

[2]     Chrohn's ileocolitis (or Chrohn's enterocolitis) refers to the Chrohn's disease involving both the small intestine and the large intestine. See  http://www.medicinenet.com/script/main/art.asp?articlekey=2869 (last accessed Dec. 12, 2016).

Prior to proceeding to the next step, the ALJ assessed Plaintiff with having the residual functional capacity ("RFC") to perform the full-range of work at all exertional levels with nonexertional limitations. T 14. At step four, the ALJ determined that Plaintiff could not perform his past work. (T.20). At step five, the ALJ relied on the VE's testimony regarding a hypothetical individual of Plaintiff's age (27 to 29 years-old), education (GED, high school education) and work experience (automotive electrician, electronics mechanic and nurse's aide), who could perform work at all exertional levels, would require two unscheduled breaks of ten minutes per day,[3] could understand, remember and carry out simple instructions and tasks, could consistently interact appropriately with co-workers and supervisors, could frequently interact with the general public, needed a low stress environment (defined as having no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in the work routine), and could maintain concentration and focus up to two hours at a time. (T.44). The VE testified that this hypothetical individual could perform the representative positions of industrial cleaner (1.4 million jobs in the national economy) and cleaner (362,788 jobs in the national economy), which were unskilled jobs at the medium exertional level. (T.45). The VE also testified that there were representative unskilled jobs at the light exertional level that

---

[3] When the ALJ changed the hypothetical to include four to five unscheduled 10-minute breaks, the VE could not identify any full-time, competitive basis jobs that such an individual could perform, "without special circumstances." (T.47).

such an individual could perform, namely, mail clerk and small product assembler. (T.46-47). The ALJ relied on this testimony by the VE to find that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (T.20-21). The ALJ therefore entered a finding of not disabled.

## SCOPE OF REVIEW

When considering a claimant's challenge to the Commissioner's decision denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), but "defer[s] to the Commissioner's resolution of conflicting evidence." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted)). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

### I.   Plaintiff's First Point: Step Three Error

Plaintiff asserts that the ALJ erroneously failed to discuss the record evidence when he found, at step three, that Plaintiff neither met nor medically equaled the requirements of Listing 5.06 (inflammatory bowel disease), set forth at 20 C.F.R. Part 404, Subpart P, Appendix. This assertions is unpersuasive as discussed further below.

To meet the requirements of Listing 5.06, a claimant must show that he satisfies either paragraph A or paragraph B of the Listing. Plaintiff does not claim that his condition met the criteria of paragraph A. Subpart B of § 5.06 may be satisfied if the claimant shows two of six specific signs and symptoms, "despite continuing treatment as prescribed and occurring within the same consecutive 6-month period." 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.06B. Plaintiff argues, on appeal, that he fulfills the following two criteria listed in § 5.06B:

> 1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart;
> . . .
> 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart. . . .

Plaintiff claims that his Crohn's disease met the criteria of the first sentence of Listing 5.06B because he had a hemoglobin of less than 10.0 g/dL in evaluations more than 60 days apart, i.e., in May 2012, August 2013, and October 2013. (See Plaintiff's Brief

("Pl.'s Br.") at 15-16). However, as Defendant notes, Plaintiff's argument ignores the fact that under Listing 5.06B(1), these evaluations had to occur at least 60 days apart *and* within the same consecutive 6-month period. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.06B. While Plaintiff's May 11, 2012, hemoglobin levels of less than 10.0 g/dL and his subsequent hemoglobin levels of less than 10.0 g/dL on August 26, 2013, and October 11, 2013, were more than 60 days apart, those levels did not fall within the same consecutive 6-month period, but instead were more than a year apart. The May 2012, and August 2013, levels were  about 15 months apart, and the May 2012, and October 2013, levels were about 17 months apart. Although the August 26, 2013, and October 11, 2013, levels were within the same consecutive 6-month period, they were not at least 60 days apart. Accordingly, the record contains substantial evidence that Plaintiff's Crohn's disease did not meet the criteria of Listing 5.06B(1).

The ALJ mentioned all six subsections under § 5.06B. (See T.12-13). With particular regard to subsection (1), he noted that "while the record contains periods of anemia secondary to [Plaintiff]'s Crohn's disease, laboratory findings fail to document the necessary levels of diminished hemoglobin or serum albumin levels on at least two occasions at least sixty days apart." (T.12-13). The ALJ's omission of reference to particular pieces of evidence could not have had an effect on the outcome of his decision, as discussed above. Therefore, any error is harmless.

In his reply brief, Plaintiff pivots to arguing that the ALJ and Defendant failed to acknowledge that normal hemoglobin levels fall in the range of 13.7 to 17.5 g/Dl, and many of Plaintiff's levels were below 13.7 g/DL over an 18-month period. (See Plaintiff's Reply ("Pl's Reply") (noting results of 11.05 g/Dl on February 17, 2012 (T.380); 10.1 g/Dl on April 5, 2012 (T.517); 8.1 g/Dl on May 11, 2012, 7.9 g/Dl on May 12, 2012, and 8.3 g/Dl on May 13, 2012 (T.388-89); 9.8 g/Dl on August 26, 2013 (T.455); 10.0 g/Dl on September 11, 2013 (T.453); and 9.5 g/Dl on October 11, 2013 (T.502)). However, the hemoglobin-level criteria specified in Listing 5.06B(1) is clear and does not provide for an exercise of discretion to consider low hemoglobin levels that are abnormal but equal to or greater than 10.0 g/DL.

The Court need not consider whether Plaintiff meets the criteria set forth in subsection (5) of § 5.06B because Plaintiff must show that he meets *at least two* subsections of § 5.06B. However, he has only offered as to subsections (1) and (5) of § 5.06B. As discussed above, he is unable to fulfill subsection (1). Therefore, there is no need to consider subsection (5).

## II. Plaintiff's Second Point: RFC Not Supported by Substantial Evidence

### A. Failure to Adequately Account for Plaintiff's Frequent Need to Use the Bathroom

Plaintiff argues that the ALJ should have found that he required more than two ten-minute unscheduled breaks throughout an 8-hour workday to account for the increased frequency and

unpredictability of his need to have bowel movements due to his Chrohn's disease. (T.19-20). As noted above, the ALJ found that Plaintiff "should be allowed ready access to restroom facilities; [and] be allowed approximately two unscheduled breaks of 10 minutes in duration per day[.]" (T.14; see also T.19 ("[A]llowing . . . ready access to a restroom facility with the ability to take two, ten-minute unscheduled breaks in addition to normal breaks[4] in 'low stress' work environment adequately addresses all of his conditions.").

Defendant asserts that there was no error, because the ALJ accounted for five restroom breaks in an eight-hour day, or a break every 1.6 hours. (See Defendant's Brief ("Def's Br.") at 20). Defendant purports to rely on Plaintiff's own estimates, given to his medical providers, of how often he used had bowel movements in a 24-hour period. (See id. (citing T.331 ("semisolid stool x 3-4 a day"; 4/11/12); T.350-51 ("about 4 to 8 loose stools a day"; 5/21/12); T.421 ("5-10 liquid-mush [bowel movements] daily with urgency"; 8/22/13); T.498-99 ("5-10 loose-watery [bowel movements]" "daily with urgency"; 10/11/13)). Thus, Defendant summarizes, Plaintiff reported to his medical providers that, throughout the relevant period, he had between 3-to-10 bowel movements per day.

---

[4]   The Commissioner's policy rulings assume entitlement to three breaks approximately two hours apart in the full-time competitive work environment. See, e.g., Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *6 (S.S.A. July 2, 1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").

According to Defendant, this averages out to one bowel movement every 2.4 to 8 hours. Defendant furthermore purports to "giv[e] Plaintiff the benefit of the doubt by removing 8 hours from a 24-hour day for sleep and using the highest number of reported bowel movements (i.e., 10 bowel movements) during 16 hours," which Defendant interprets to mean that "Plaintiff's highest reported frequency of bowel movements during the relevant period was 1 bowel movement every 1.6 hours, the exact frequency that the ALJ found that Plaintiff required." (Def's Br. at 20). This line of reasoning is flawed for multiple reasons. The assertion that Plaintiff averaged "one bowel movement every 2.4 to 8 hours" impermissibly assumes a fact not reflected in the record, namely, that Plaintiff's bowel movements occurred predictably and on a regular schedule. In order to make this assertion, Defendant "cherry-picked" evidence and ignored instances where Plaintiff reported a much higher frequency of bowel movements. For example, on May 9, 2012, Plaintiff reported having 2-4 stools per hour over the past several days. (T.338). At the hearing on November 21, 2013, Plaintiff testified, "I go the bathroom quite often. Sometimes up to once or twice an hour." (T.36). Moreover, Defendant's proffered rationale for the number of bathroom breaks ignores Plaintiff's statements, recorded by his medical providers, that his bowel movements sometimes occurred "with urgency" and thus were not predictable. Defendant's assertion that "Plaintiff's highest reported frequency of bowel movements during the relevant period

was 1 bowel movement every 1.6 hours" likewise assumes a fact not reflected in the record, as there are no statements by Plaintiff to his providers indicating that he ever had "one bowel movement every 1.6 hours" during a 24-hour period.  Perhaps most important, the bathroom break timetable crafted by Defendant to justify the ALJ's finding that two unscheduled breaks were sufficient to account for Plaintiff's needs was never articulated by the ALJ. This Court may not accept post hoc rationalizations offered by the Commissioner to uphold the ALJ's decision. See generally Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168–69 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action . . . . [A]n agency's discretionary order [must] be upheld, if at all, on the same basis articulated in the order by the agency itself[.]") (quotation omitted).

The rationale actually offered by the ALJ was conclusory. (See T.17 ("While the condition and its associated symptoms continue to present significant challenges, the undersigned finds that providing the claimant with ready access to a restroom with the opportunity for two unscheduled ten-minute breaks in addition to those customarily allowed in a competitive work environment, is an adequate accommodation.")). In addition, it fails to cite to any evidence indicating that Plaintiff only needs two, ten-minute unscheduled breaks per day. Plaintiff did not testify regarding the duration of his bowel movements. Furthermore, there was no medical opinion evidence obtained from any of Plaintiff's treating sources,

and the Commissioner did not request that Plaintiff undergo a consultative physical examination. Arguably the most important aspect of the RFC assessment, in light of the nature of Plaintiff's severe impairments, is based on the ALJ's interpretation of raw medical data and his own lay opinion. The Court cannot find that the RFC determination is supported by substantial evidence, and remand is required. E.g., Swanson v. Colvin, No. 12-CV-645S, 2013 WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013) (remanding for failure to develop the record where ALJ "fail[ed] to obtain an RFC assessment from any treating source"); see also House v. Astrue, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citing, inter alia, Suide v. Astrue, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand)).

Defendant notes that the Second Circuit has stated that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant]'s residual functional capacity." Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (concluding ALJ's failure to request treating physician opinion did not require remand because, inter alia, medical record contained another treating source opinion); see also 20 C.F.R. § 1513(b)(6) ("Although we will request a medical source statement about what

you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete."). In this case, however, there was an "obvious gap" in the record because the record contains no medical expert opinions, either from a treating source or consultative examiner. See Iacobucci v. Comm'r of Soc. Sec., No. 1:14-CV-001260GWC, 2015 WL 4038551, at *5 (W.D.N.Y. June 30, 2015) (citations omitted); Aceto v. Commissioner of Social Sec., No. 6:08-CV-169 (FJS), 2012 WL 5876640, at *16 (N.D.N.Y. Nov. 20, 2012) (because "the ALJ had nothing more than treatment records and consultative reports to review, he had an affirmative duty to develop the record and request that Plaintiff's treating physicians assess her RFC").  The Commissioner argues that the Court should not assign error to the ALJ on this ground, because he specifically asked Plaintiff's representative if he had a chance to review the record, and the attorney replied he had no objections. (T.29-30). The fact remains that there is no indication that the ALJ ever solicited physical RFC assessments from Plaintiff's treating physician since 2008, Dr. Alagappan, and his gastroenterologist since January 2011, Dr. Shah. Since the Court is remanding on the basis that the RFC is unsupported by substantial evidence and needs to be supplemented regarding the accommodations Plaintiff requires for bathroom breaks, the ALJ should request RFC assessments from Plaintiff's treating sources.

## III. Errors in the Credibility Assessment

Plaintiff contends that the ALJ erred in analyzing the credibility of his subjective complaints of pain and other limitations resulting from his impairments, in particular by unjustifiably penalizing him for noncompliance with treatment. The fact that a claimant is not fully compliant with prescribed treatment or medications does not preclude a finding of disability. See, e.g., Frankhauser v. Barnhart, 403 F. Supp.2d 261, 277 (W.D.N.Y. 2005) ("Nor does the fact that Plaintiff often failed to fully comply with his prescribed treatment require a finding of 'not disabled.'"). Rather, "[c]ompliance with prescribed treatment that is capable of restoring a plaintiff's ability to work is required to obtain benefits, unless there is a good reason for not following prescribed treatment." Id. at 277-78 (citing 20 C.F.R. §§ 404.1530, 416.930). Where, as here, an ALJ draws an adverse credibility inference against a claimant based on a failure to follow prescribed treatment, SSR 96-7p 1996 WL 374186 (S.S.A. July 2, 1996), provides that such an inference may not be made "without first considering any explanations that the individual may provide, or other information in the case record that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at *7. For instance, the ALJ found that "[n]otably," on April 5, 2013, gastroenterologist Ashok N. Shah, M.D. "indicated [Plaintiff] was inconsistent with medication compliance." (T.18). Dr. Shah's actual note states that Plaintiff

"stopped medications due to insurance." (T.439). The Commissioner argues that this is incorrect, since in April 2013, Plaintiff was incarcerated at the Genesee County Jail (T.439), and his medications were being provided to him by the State Department of Corrections.  This is true; however, there were times in the past that Plaintiff was not covered by insurance, and Dr. Shah may have been referring to those periods. (E.g., T.394 (4/12/12 note stating that Plaintiff was off medications since August 2011, due to insurance issues; insurance "now will cover medications").

The ALJ commented that Plaintiff's Crohn's disease was "generally a condition that is adequately managed when [he] is complaint with treatment recommendations." (T.17). However, the ALJ did not cite to specific evidence in the record, and it is unclear to the Court on which evidence he is relying. For instance, when Plaintiff was incarcerated in the Genesee County Jail from February 2010, to December 2010, he was compliant with treatment. Over the course of 10 months, he was prescribed new medications including Asacol, prednisone, and Humira, but his symptoms increased or did not improve. (See T.272 (Asacol increased on 6/10/10, and prednisone, Prilosec, and lactose tabs added due to exacerbation of Crohn's); T.207 (Humira added and prednisone increased on 8/5/10); T.315 (noting that any food or liquid orally caused nausea, chronic low abdomen cramping with postprandial bowel movements 3 to 10 times per day, averaging 4 to 5 times per day). On remand, the

ALJ is requested to clarify his credibility assessment with reference to particular evidence in the record.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. In particular, the ALJ is directed to request physical RFC assessments from Plaintiff's treating physician and gastroenterologist, reformulate the RFC assessment, and clarify the evidence supporting his finding that Plaintiff's noncompliance was not excused by valid reasons and that his Crohn's disease was well-controlled with treatment.

SO ORDERED.


**S/Michael A. Telesca**
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     December 15, 2016
           Rochester, New York